RECEIVED

DEC 2 2 2017

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

MELANEE BRYANT

VERSUS

WAL-MART LOUISIANA LLC

CIVIL ACTION NO. 2:16-01450

JUDGE JAMES T. TRIMBLE, JR.

MAG. JUDGE KAY

## MEMORANDUM RULING

Before the court is "Wal-Mart Louisiana, LLC's Motion for Summary Judgment" (R. #12) wherein Defendant, Wal-Mart Louisiana, LLC ("Wal-Mart") seeks to be dismissed from the instant lawsuit pursuant to rule 56 of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

Plaintiff, Melanee Bryant, was involved in a slip and fall accident at Register 12 in a Wal-Mart store on October 5, 2015.[1] It is undisputed that there is no evidence that any Wal-Mart employee created the condition or caused the puddle of water to be on the floor.[2]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

---

[1] Defendant's exhibit A, Melanee Bryant depo. pp. 41-43.
[2] Defendant's exhibit A, Bryant depo. p. 54, Defendant's exhibit B, Barbara Johnson depo. p. 14, lns. 20-22; Defendant's exhibit C, Claudia Roberson depo. p.14, lns. 6-17, and p. 15, lns. 22-24; Plaintiff's Response to Defendant's Statement of Material Fact, ¶ 2, R. #14.

law.[3] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[4] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[5] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[6] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[7] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[8] There is no genuine issue of material fact if, viewing the evidence in the light more favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[9] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.[10] The court will construe all evidence in the light most favorable to the nonmoving party, but will not infer the existence of evidence not presented.[11]

---

[3] Fed. R. Civ. P. 56(c).
[4] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).
[5] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).
[6] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).
[7] Anderson, 477 U.S. at 249.
[8] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
[9] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
[10] Anderson, 477 U.S. at 249-50.
[11] Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

## LAW AND ANALYSIS

Plaintiff was shopping with three of her friends, on the date of the accident. After she finished shopping and had checked out, she attempted to grab a candy bar on cash register aisle 12 (a closed aisle adjacent to the aisle from which Plaintiff testified she checked out). In doing so, Plaintiff allegedly slipped and fell in a puddle of water.

Plaintiff is relying on circumstantial evidence to prove that Wal-Mart had constructive notice that the water was on the floor for a long enough period of time to have *constructive knowledge.* In White v. Wal-Mart Stores, Inc., a two-prong analysis requires Plaintiff to (1) "come forward with positive evidence showing that the damage causing condition existed for some period of time," and (2) show "that such time was sufficient to place the merchant defendant on notice of its existence."[12]

There is no testimony or evidence as to how the water got on the floor or how long it had been there. Plaintiff relies on circumstantial evidence as well as the doctrine of spoliation to prove her case.

*Spoliation*

As a general rule, in this circuit, giving an adverse instruction may not be imposed unless there is evidence of "bad faith".[13] Mere negligence is not enough to warrant an adverse inference instruction on spoliation.[14] Spoliation has been defined as "the destruction or significant alteration of evidence, or the failure to preserve property for

---

[12] 699 So.2d 1081, 1082 (La. 9/9/97).
[13] Condrey v. Sun Trust Bank of Ga., 431 F.3d 191, 203 (5th Cir. 2005); King v. Ill. Cent. R.R., 337 F.3d 550, 556 (5th Cir. 2003); United States v. Wise, 221 F.3d 140, 156 (5th Cir. 2000).
[14] Russell v. Univ. of Tex. Of Permian Basin, 234 Fed.Appx. 195, 208 (5th Cir. 2007).

another's use as evidence in pending or reasonably foreseeable litigation."[15] "The evidentiary rationale derives from the common sense notion that a party's destruction of evidence which it has reason to believe may be used against it in litigation suggests that the evidence was harmful to the party responsible for its destruction."[16]

This sanction serves a threefold purpose of (1) deterring parties from destroying evidence; (2) placing the risk of an erroneous evaluation of the content of the destroyed evidence on the party responsible for its destruction; and (3) restoring the party harmed by the loss of evidence helpful to its case to where the party would have been in the absence of spoliation.[17] In borderline cases, an inference of spoliation, in combination with "some (not insubstantial) evidence" for the plaintiff's cause of action, can allow the plaintiff to survive summary judgment.[18]

Where one seeks an adverse inference regarding the content of destroyed evidence, one must first show that "the party having control over the evidence ... had an obligation to preserve it at the time it was destroyed."[19] Such an obligation usually arises when a "party has notice that the evidence is relevant to litigation ... but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation."[20]

In the instant case, Wal-Mart investigated the incident, took photos and viewed the video surveillance. Plaintiff asserts that Wal-Mart has denied that it had any record of the

---

[15] West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999).
[16] Kronisch v. U.S., 150 F.3d 112, 126 (2d Cir. 1998).
[17] See West, 167 F.3d at 779.
[18] Kronisch, 150 F.3d at 128.
[19] Id., 150 F.3d at 126.
[20] Id.

inspection[21] and any video or photo evidence that may depict the aisle at the time of the incident. Wal-Mart contends that it produced a photograph of the aisle where the accident occurred and refers the court to Exhibit H attached to Plaintiff's opposition to the motion for summary judgment.[22] The court has reviewed the photo which reveals a cash register aisle. Plaintiff has not challenged the photo as not being cash register 12.

With regard to the video surveillance, Wal-Mart produces the deposition testimony of its corporate representative, Vicki Dronet:

Q.    For example, where Melanee Bryant allegedly fell, in one of the check-out aisles, is there was a video camera for that area?

A.    It's on the register.

Q.    It's on the register?

A.    It's over the actual cash register.

Q.    So where is that video? Wouldn't that have captured the fall?

A.    No, sir.

*****

Q.    -- you don't have cameras to cover that area of the store where she fell?

A.    I have cameras on action alleys, like I said, which is your main walkways. I have a camera on that register. But she fell in the gap, right here.

Q.    So there is no camera that will show any part of the area?

A.    No, sir.[23]

---

[21] There is an Incident Report attached as exhibit F(R. #14-6) which Wal-Mart must have produced.
[22] R. #14-8.
[23] Defendant's exhibit G, Vicki Dronet depo. p. 46-47 (R. #12-1)).

Immediately after the incident, Wal-Mart employee, Brittanie Tuitoi, went to the Asset Protection office and confirmed that neither the aisle nor the accident was captured on video.[24]

Plaintiff is arguing that Wal-Mart had a duty to preserve other surrounding areas of the store as well as the area where Plaintiff allegedly fell. Wal-Mart remarks that Plaintiff made this video request on April 7, 2017, eighteen months after the accident when Plaintiff's counsel deposed Ms. Dronet. By that time, Wal-Mart acknowledges that the video was no longer available.[25] Plaintiff also made a request for production of "photographs and videos of the scene of the alleged accident at the time of the accident" on February 2017 (over one year after the accident).[26]

Plaintiff asserts that on September 6, 2016, the date the lawsuit was filed (11 months after the accident), Plaintiff propounded interrogatories to Wal-Mart and requested "any and all photographs, slides, etc., including any possible surveillance photographs or motion pictures of plaintiff taken at any time, which may be relevant to any issue in this proceeding."[27] Plaintiff asserts that she supplemented her interrogatory request and asked for any video surveillance of the store on March 16, 2017.[28] In its answer to the supplemental interrogatory request, Wal-Mart informed Plaintiff that there was no video surveillance of the area in which Plaintiff's accident occurred.[29]

---

[24] Defendant's exhibit H, Tuitoi affidavit, R. #12-11.
[25] Defendant's exhibit G, Dronet depo. pp. 56-57.
[26] See Defendant's exhibit A, Plaintiff's Notice of 30(b)(6) deposition.
[27] Plaintiff's exhibit A, Request for Production No. 7.
[28] Plaintiff's exhibit B, Letter to Philip Fontenot re Supplemental Requests; Plaintiff's exhibit C, Defendant's Responses to Supplemental Requests.
[29] Plaintiff's exhibit C.

Wal-Mart remarks that the September 20, 2016 request for production was not sent by Plaintiff until nearly a year after the accident, by which time, any video surveillance of areas surrounding where the accident occurred was no longer available. Wal-Mart's video retention policy, permits destruction of video surveillance after thirty (30) days.[30] In addition to being dilatory, Wal-Mart argues that this request did not put the company on notice that Plaintiff was seeking video surveillance of areas of the store other than the accident scene. Wal-Mart further challenges Plaintiff's March 2017 discovery request wherein Plaintiff broadly asked if Wal-Mart had any video surveillance of its store, without limitation to area or relevance, as well as the specific location of Plaintiff's fall. Wal-Mart objected to the request as being over-broad and informed Plaintiff that no video surveillance of the area of the accident existed because that area was not covered by video surveillance.[31]

Plaintiff remarks that Wal-Mart's retention policy obligates Wal-Mart to "secure video of the incident sent – at least 1 hour prior to the incident and 1 hour after", if available.[32] Thus, Plaintiff argues that Wal-Mart knew or should have known of its duty to preserve video from the scene of the incident. Plaintiff then suggests that "the scene of the incident goes beyond the small portion of the store in which it is trying to restrict the plaintiff and this Court's view to."[33] Plaintiff argues that in a slip and fall case, all the action ways and aisles that plaintiff traversed are relevant and part of the scene because it shows when and where the plaintiff was prior to the incident, and what occurred before,

---

[30] Defendant's exhibit A.
[31] Plaintiff's exhibit C, R. #25-4.
[32] Plaintiff's exhibit A, Walmart Incident Policy.
[33] Plaintiff's Third Sur-Reply. R. #34, p. 1.

during and after the fall. We disagree with Plaintiff. A requirement for a merchant to preserve video surveillance of areas of the store not involved in an incident would be over-burdensome, onerous and in this case irrelevant.

The court finds that Wal-Mart had no duty to preserve video surveillance of an area that did not involve the incident, nor should a merchant be expected to preserve video surveillance of areas not involved in an incident for 18 months after the incident. Thus, we find that Wal-Mart was not acting in bad faith by not producing video surveillance they did not have or video surveillance of areas of the store that did not involve the incident that is the subject matter of this lawsuit. Accordingly, there will be no adverse instruction to support Plaintiff's claim.

*Actual or constructive notice*

Wal-Mart maintains that there is no evidence to suggest that it had actual or constructive notice of the puddle of water. As previously stated, neither Plaintiff, nor her shopping companions knew how the water got on the floor.[34] Wal-Mart further maintains that there is no evidence to suggest how long the water was on the floor before Plaintiff slipped and fell.

Louisiana Revised Statute 9:2800.6 governs slip-and-fall accidents in merchant retail stores and is as follows:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This includes a reasonable effort to keep the premises free

---

[34] Defendant's exhibit A, Bryant depo. p. 54, Defendant's exhibit B, Johnson depo. p. 14, lns. 20-22; Defendant's exhibit C, Roberson depo. p.14, lns. 6-17, and p. 15, lns. 22-24.

of any hazardous conditions which reasonably might give rise to damage.

B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

C. Definitions

(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

(2) "Merchant" means one whose business is to sell goods, food, wares, or merchandise at a fixed place of business. For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.

D. Nothing herein shall affect any liability which a merchant may have under Civil Code arts. 660, 667, 669, 2317, 2322 or 2695.

Plaintiff must prove:

1. The condition presented an unreasonable risk of harm and that risk was reasonably foreseeable;

2. The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence, and

3. The merchant failed to exercise reasonable care.[35]

A plaintiff's failure to prove any of these factors is fatal to her claim.[36] Courts will not infer constructive notice; the claimant must make a positive showing of the existence of the condition prior to the fall and that it existed for some period of time.[37] "Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question; however, there remains the prerequisite showing of some period of time."[38] A "defendant need not come forward with positive evidence of the absence of the spill."[39]

Plaintiff maintains that circumstantial evidence proves that water existed on the floor for a period of time prior to the incident that satisfies the first prong in White. Plaintiff asserts that cash register aisle 12 was closed while she was checking out in the neighboring aisle. Plaintiff further asserts that the water must have been there for a long period of time because she and her friend were in line for at least the amount of time to

---

[35] Allen v. Wal-Mart Stores, Inc., 850 So.2d 895, 897 (La.App. 2d Cir. 6/25/03).
[36] Id.
[37] White v. Wal-Mart Stores, Inc., 699 So.2d 1081, 1084 (La. 9/9/97).
[38] Id.
[39] Id. at 1086.

checkout a month's worth of groceries; thus, she suggests that the water was in the aisle for a substantial amount of time. Plaintiff provides no evidence as to how long it takes to check out a month's worth of groceries. To be clear, Plaintiff's friend, Ms. Johnson, testified in her deposition that on food stamp day, she purchased a month's worth of groceries. However, she does not say how many groceries that would include, how many people are in her family, or the dollar amount of groceries she purchased.[40] There is no evidence as to how many groceries Plaintiff purchased.

Plaintiff also submits a photograph of the aisle where she fell to suggest that the aisle had not been inspected for some time because the photograph revealed products on the floor.[41] Plaintiff relies on the photograph of cash register aisle 12 which shows two small grocery and/or snack items on the floor. Plaintiff argues that this reveals that no one inspected the floor for a long period of time because if they had, these products would have been picked up. We find this speculative and not helpful to Plaintiff's case.

Plaintiff submits the deposition testimony of Dusty Doyal who testified that he was responsible for checking the aisle on a consistent 30-minute basis.[42] Plaintiff suggests that there is no proof that he actually made this inspection every 30 minutes. Plaintiff submits Mr. Doyal's testimony that he checked the aisles at his discretion and when he wanted to check them.[43] Plaintiff argues that because Mr. Doyal testified that he inspected the area at his discretion, that he must not have inspected the area for a long period of time. We are not willing to make that leap. A reading of Mr. Doyal's deposition testimony

---

[40] Plaintiff's exhibit A, p. 18, lns. 14-18, p. 19, lns. 2-5.
[41] Plaintiff's exhibit H.
[42] Plaintiff's exhibit G, Dusty Doyal, p. 9.
[43] Plaintiff's exhibit G, Doyal depo. p. 11.

in context does not lead us to believe that Mr. Doyal was noncompliant in his duty to inspect the area where the incident occurred; nor does it provide evidence that the puddle of water remained on the floor for such a period of time that it would have been discovered if the merchant had exercised reasonable care.

There is no evidence as to how the water got on the floor or how long it remained on the floor. There is no evidence that Wal-Mart knew the water was on the floor or should have known the water was on the floor. Thus, because Plaintiff cannot show that Wal-Mart created the condition or had actual knowledge of it, plaintiff has failed to establish that Wal-Mart had constructive notice of the water on the floor and Plaintiff has failed to show that Wal-Mart failed to exercise reasonable care. Accordingly, because of the lack of evidence, Plaintiff has failed to carry her burden of proving that the water had been on the floor for such a period of time that Wal-Mart should have discovered its existence.

## CONCLUSION

For the reasons set forth above, the motion for summary judgment will be **GRANTED** dismissing with prejudice Plaintiff's claims against Wal-Mart Louisiana LLC at Plaintiff's costs.

**THUS DONE AND SIGNED** in Alexandria, Louisiana on this 22nd day of December, 2017.

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JDUGE

12